**IT IS ORDERED as set forth below:**

**Date: September 4, 2025**

_____
**Sage M. Sigler
U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| In Re: | CASE NUMBER: |
| **PAMELA SHARAIL POWELL**, | **22-57011-SMS** |
| Debtor. | CHAPTER 7 |
| **MICHELE MCCAULEY**, | ADVERSARY PROCEEDING NUMBER: |
| Plaintiff, v. | **22-05166-SMS** |
| **PAMELA SHARAIL POWELL**, | |
| Defendant. | |

**ORDER DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT**

The purpose of a bankruptcy discharge is to provide a fresh start to honest but unfortunate debtors. Some debts, such as student loans, certain taxes, or domestic support obligations, are generally excepted from discharge. For other debts, such as a debt resulting from fraud or intentional injury, nondischargeability requires a determination by a court of competent jurisdiction.

The Bankruptcy Code allows creditors 60 days after the initial meeting of creditors to file

a complaint against the debtor asserting that the bankruptcy court should find a debt nondischargeable. Once that 60-day window closes (along with any extensions granted by the bankruptcy court), a creditor can neither initiate a nondischargeability proceeding nor add additional nondischargeability claims to an already-filed complaint against the debtor. But under certain circumstances, a nondischargeability complaint amended after the deadline may relate back to the original date of filing.

The original complaint in this proceeding pursued a nondischargeability determination on an unliquidated defamation claim. Once the Court determined that the underlying defamation claim was no longer viable, the plaintiff sought leave to amend her complaint to assert a racketeering claim as the underlying basis for nondischargeability. For the reasons set forth below, the Court denies the plaintiff's request to amend.

## I. JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I) as a determination of the dischargeability of a debt.

## II. BACKGROUND

### a. Prebankruptcy Litigation

Michele McCauley ("McCauley") formerly owned a burger restaurant franchise that employed Pamela Sharail Powell ("Powell") in downtown Atlanta. After the employment relationship ended, Powell filed suit against the franchise,[1] alleging that her employment was terminated in retaliation for supporting the sexual harassment claims of another employee against

---

[1] *Pamela Powell v. Burger Docs Atlanta, Inc.*, United States District Court for the Northern District of Georgia, Case No. 1:19-cv-03808-MLB (the "Retaliation Suit").

the franchise's general manager.[2] During the Retaliation Suit, the declaration of Jawanna Edwards (the "Declaration"), which contained allegedly defamatory statements about McCauley, was affixed to Powell's response in opposition to McCauley's motion for summary judgment filed on March 18, 2021. For their parts in filing the Declaration, McCauley sought sanctions under Fed. R. Civ. P. ("Rule") 11 against Powell and her counsel, but the district court refused to award them (Retaliation Suit, Doc. 103). After a jury trial, judgment was entered in favor of McCauley's franchise and against Powell.

During the Retaliation Suit, McCauley filed a lawsuit in the Superior Court of DeKalb County (civil action file no. 21CV10225, the "DeKalb Suit") against declarant Jawanna Edwards, Powell, and Powell's Retaliation Suit counsel. In the DeKalb Suit complaint, McCauley asserted a single count of libel against all defendants for filing the Declaration. While the DeKalb Suit was pending, Powell initiated a bankruptcy case and notified McCauley of the filing.

### b. The Bankruptcy Case

Powell filed her voluntary petition initiating the above-styled bankruptcy case under chapter 7 on September 3, 2022 (the "Bankruptcy Case"). Notice was sent to all disclosed creditors that Powell's meeting of creditors would be held telephonically on October 12, 2022, and that the deadline to file a complaint to except a debt from discharge under Fed. R. Bankr. P. ("Bankruptcy Rule") 4007(c) was December 12, 2022 (the "4007(c) Deadline," Bankruptcy Case, Doc. 5). The chapter 7 trustee held and concluded the meeting of creditors as scheduled and reported on the Court's docket that there was no property available for distribution from the estate over and above that exempted by law on October 18, 2022. On January 10, 2023, the Court entered an order discharging Powell and closing the Bankruptcy Case (Bankruptcy Case, Doc. 15). Prior to the

---

[2] McCauley was not the restaurant's general manager.

4007(c) Deadline, on December 6, 2022, McCauley filed a complaint to determine the dischargeability of her defamation claim pending in the DeKalb Suit (the "Complaint," Doc. 1), initiating this adversary proceeding.

### c. This Adversary Proceeding

In the original Complaint, McCauley accused Powell, through her counsel in the Retaliation Suit, of filing the allegedly defamatory Declaration. McCauley asserted that by allowing her counsel to file the Declaration, which was the sworn testimony of a third party, Powell intentionally, willfully, and maliciously injured McCauley, and any recovery against Powell on that claim is nondischargeable under § 523(a)(6).

On December 19, 2022, Powell filed her *Answer to Complaint* (Doc. 6) and *Motion to Dismiss and for Abstention* (the "Motion to Dismiss," Doc. 7). McCauley filed her response to the Motion to Dismiss on December 29, 2022 (Doc. 9). The Court held a hearing on the Motion to Dismiss on March 21, 2023, and entered an order the same day denying dismissal of the Complaint, abstaining from determining the amount of McCauley's defamation claim given the pendency of the DeKalb Suit, modifying the automatic stay to allow the DeKalb Suit to proceed to liquidate McCauley's claim, and staying this proceeding (Doc. 20).

Other than a status conference held on May 22, 2024, this proceeding was dormant until Powell filed a *Motion for Summary Judgment* (the "MSJ," Doc. 24) on November 6, 2024. In the MSJ, Powell argued that McCauley could not maintain this proceeding because the defamation claim—the sole claim asserted as the basis for McCauley's debt in the original Complaint—had been dismissed in the DeKalb Suit.[3] McCauley filed a response on November 22, 2024 (Doc. 25),

---

[3] The Georgia Court of Appeals affirmed the dismissal of the defamation claim after McCauley appealed. *See McCauley v. Powell*, 373 Ga. App. 169, 908 S.E.2d 27 (2024).

asserting that she still had a claim pending against Powell because she amended her complaint in the DeKalb Suit to include a count for racketeering. The Court held a hearing on the MSJ on February 25, 2025, and granted it on the basis that the only claim underlying the nondischargeability Complaint had been dismissed in the DeKalb Suit (Doc. 32). At the MSJ hearing, McCauley's counsel requested that her client be granted leave to amend the Complaint to add the racketeering claim, and Powell's counsel asserted her opposition to such leave. The Court reserved its ruling on whether to grant leave to amend the Complaint and allowed McCauley 10 days to file a motion to amend the Complaint. *Id.*

On March 7, 2025, McCauley filed a *Motion for Leave to Amend Complaint* with an associated brief (the "Motion to Amend," Doc. 34), which is presently before the Court, and filed a proposed amended complaint (the "Proposed Amended Complaint" or "PAC") as an attachment to the Motion to Amend. Powell filed a response to the Motion to Amend (the "Response," Doc. 36) on March 11, 2025. McCauley filed her reply to Powell's Response (the "Reply," Doc. 38) on March 25, 2025, and the Motion to Amend was submitted for adjudication.

### III. ANALYSIS

####    a. *Amendment under Rule 15*

A party may amend its pleading once before trial as a matter of course within certain time limits. Once those time limits have passed, a party may only amend its pleading "with the opposing party's written consent or the court's leave," which the Court should freely give "when justice so requires." Fed. R. Civ. P. ("Rule") 15(a)(2), made applicable by Bankruptcy Rule 7015. Courts generally allow plaintiffs at least one chance to amend the complaint before dismissal with prejudice. *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). But Courts must exercise their discretion to deny an amendment where there has been undue delay, such an amendment

would cause undue prejudice to the opposing party, or amendment would be futile. *Id. See also Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant.").

### b. *Statute of Limitations to Initiate Nondischargeability Proceedings*

Section 523(c) allows a creditor to seek a judgment from the bankruptcy court excepting its debt from a debtor's discharge if the debt resulted from "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). To obtain the judgment, a creditor must first initiate an adversary proceeding by filing a complaint against the debtor "no later than 60 days after the first date set for the meeting of creditors under § 341(a)." Bankruptcy Rules 4007(c) and 7001(6); *see also Resolution Tr. Corp. v. McKendry (In re McKendry)*, 40 F.3d 331, 337 (10th Cir. 1994) ("[T]he question of the dischargeability of the debt under the Bankruptcy Code is a distinct issue governed solely by the limitations periods established by bankruptcy law."). Although McCauley timely filed the original Complaint, the Proposed Amended Complaint, if allowed, would be filed long after the 4007(c) Deadline. The Proposed Amended Complaint would therefore be untimely unless it relates back to the date McCauley filed the original Complaint under Rule 15(c). *See Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 150 n.3 (1984) ("The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide.").

### c. *Relation Back*

There are two possible ways that an amended complaint against the same party can relate back. First, when the applicable statute of limitations allows relation back. *See* Rule 15(c)(1)(A);

*see also Makro Capital of Am., Inc. v. UBS AG*, 543 F.3d 1254, 1258 (11th Cir. 2008) ("[R]elation back is permitted when the law imposing the statute of limitations itself permits relation back."). Rule 15(c)(1)(A) does not help McCauley because the 4007(c) Deadline passed before McCauley filed the Motion to Amend, and the rule does not allow late-filed complaints.

Second, an amended complaint can relate back to the filing of the original when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Rule 15(c)(1)(B); *see also Newell v. Hanks*, 283 F.3d 827, 834 (7th Cir. 2002) ("Rule 15(c) permits relation back where the claims in an amended pleading are based on the same core of facts advanced in the original."). "Rule 15(c) contemplates that parties may correct technical deficiencies or expand facts alleged in the original pleading, but it does not permit an entirely different transaction to be alleged by amendment." *Dean v. United States*, 278 F.3d 1218, 1221 (11th Cir. 2002). "[W]hen new or distinct conduct, transactions, or occurrences are alleged as grounds for recovery, there is no relation back, and recovery under the amended complaint is barred by limitations if it was untimely filed." *Holmes v. Greyhound Lines, Inc.*, 757 F.2d 1563, 1566 (5th Cir. 1985); *see also Dean*, 278 F.3d at 1221 ("Congress did not intend Rule 15(c) to be so broad as to allow an amended pleading to add an entirely new claim based on a different set of facts.").

These principles guide courts, but "the critical issue in Rule 15(c) determinations is whether the original complaint gave notice to the defendant of the claim now being asserted." *Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993). "When the facts in the original complaint do not put the defendant on notice that the new claims [] might be asserted, but the new claims instead involve[] separate and distinct conduct, such that the plaintiff would have to prove completely different facts than required to recover on the claims in the original complaint, the new

claims do not relate back." *Caron v. NCL (Bah.), Ltd.*, 910 F.3d 1359, 1368 (11th Cir. 2018) (internal citation and quotation omitted).

If the original Complaint did not put Powell on notice that a racketeering claim could be filed against her, then the Proposed Amended Complaint does not relate back to the date of the original Complaint, and the Motion to Amend must be denied. If the original Complaint provided Powell notice of the racketeering claim, the Proposed Amended Complaint could relate back to the date McCauley filed the original Complaint.

> d. ***The Complaint did not put Powell on notice of the racketeering claim.***

In the original Complaint, McCauley alleged relatively few substantive facts. She alleged generally that Powell filed the Retaliation Suit and that Powell's counsel filed the Declaration, which contained allegedly false accusations against McCauley, and which Powell allegedly knew to be false when filed. Complaint at ¶¶ 8, 10-13. On these alleged facts, together with several legal conclusions that Powell defamed McCauley, McCauley asserted a single count against Powell of nondischargeable willful and malicious injury under § 523(a)(6).

In the Proposed Amended Complaint, McCauley adds several factual allegations, removes any request for a finding of defamation, and adds a request for damages resulting from Powell's alleged racketeering. McCauley now alleges that, in the original complaint initiating the Retaliation Suit, Powell knowingly and falsely alleged observing an act of sexual harassment on November 19, 2018. PAC at ¶¶ 10-12, 21. McCauley also now alleges that Powell knowingly and falsely filed an amended complaint with the same allegations. PAC at ¶¶ 13-16, 22. McCauley further alleges that Powell gave false testimony under oath on December 8, 2020. PAC at ¶¶ 17-20, 23-27. McCauley realleges that Powell's counsel filed the Declaration, which contained allegedly false accusations against McCauley that Powell knew to be false. PAC ¶¶ 28-29.

McCauley further alleges in Count One of the Proposed Amended Complaint that "[t]he entire [Retaliation Suit] represented a common scheme by [Powell], [Powell's counsel in the Retaliation Suit], and [the Declaration's declarant], acting in concert, to extort money from [McCauley]." PAC at ¶ 46. In summary, McCauley alleges Powell conspired with others to file a false complaint, file a false amended complaint, lie under oath in a deposition, fail to correct her deposition testimony, and file the Declaration, which contained defamatory information about McCauley that Powell knew to be false.

The differences between the facts alleged in the original Complaint and the Proposed Amended Complaint are obvious and many. But McCauley argues that the *one* common fact—that the Declaration was filed in the Retaliation Suit—shows that both complaints include the same allegations. Motion to Amend at 9 ("the [PAC] includes *an* allegation of conduct identical to that alleged in the initial [Complaint]") (emphasis added). McCauley further argues that because the original Complaint alleged defamation associated with the Declaration, and the filing of that Declaration is one of the predicate acts of McCauley's racketeering claim, she has simply added a new legal theory regarding the Retaliation Suit and expanded on the alleged facts from the original Complaint. *Id*. at 9-10 (PAC "simply adds other conduct by [Powell] that also occurred during the [Retaliation Suit]" and "simply identifies a different legal theory in the [PAC]"). McCauley also contends that the filing of the Declaration "was part of the same scheme to extort money from [her]." *Id*. at 10. McCauley argues that the Proposed Amended Complaint should therefore relate back to the filing of the original Complaint. But accusing Powell of defamation for filing the Declaration is distinct from accusing Powell, her attorney, and a third party of a conspiracy to extort money as alleged in the Proposed Amended Complaint.

McCauley alleged no racketeering activity in the original Complaint or at any other time

prior to the 4007(c) Deadline.[4] She did not even mention the existence of a third party or a possible conspiracy in the Complaint. She cannot now leverage a single allegation that Powell, through counsel, filed the allegedly defamatory Declaration on March 18, 2021, into a new racketeering claim based on completely different allegations with additional parties engaging in a coordinated scheme spanning nearly three years. Courts consistently reject such maneuvers when a plaintiff wants new allegations to "substitute[] for the original allegations" so that the plaintiff may "shift to new ground" to add an entirely new claim based on factual allegations that are "entirely different, in terms of both temporal and substantive elements," from those alleged in the original complaint. *See In re Bennett Funding Grp., Inc.*, 275 B.R. 447, 453 (Bankr. N.D.N.Y. 2001) (denying relation back where amended complaint completely abandoned original claims rather than making the factual allegations more precise or definite); *In re Dean*, 11 B.R. 542, 545 (B.A.P. 9th Cir. 1981) *aff'd*, 687 F.2d 307 (9th Cir. 1982) (denying relation back where "[a]ny reading of the original complaint makes it evident that plaintiff has shifted to new ground" in the allegations of the amended complaint); *In re Young*, 428 B.R. 804, 811 (Bankr. N.D. Ind. 2010) (denying relation back where transactions and facts in original complaint were entirely different from the amended complaint and did not place the defendant on notice of the added transactions).

McCauley relies on four cases to support her argument, but none bolster her position. In the first, *Daniels v. Bursey*, 313 F. Supp. 2d 790, 811 n.7 (N.D. Ill. 2004), the court merely "agreed[d] with [plaintiffs] that their RICO claims, which arise from the same conduct alleged in the original complaint, relate back to the date the original complaint was filed." *Id*. The original complaint there included sufficient factual allegations about the details of a fraud scheme to support adding racketeering counts to the facts already alleged. Although fraud, including "theft

---

[4] McCauley filed an amended complaint asserting a racketeering claim in the DeKalb Suit on August 21, 2023—eight months after the 4007(c) Deadline.

by deception," is a predicate act for a racketeering claim under Georgia law, defamation is not. *See* O.C.G.A. § 16-14-3(5)(A).[5] Moreover, even if racketeering activity included defamation, a single act cannot support a racketeering claim. *See Vernon v. Assurance Forensic Accounting, LLC*, 333 Ga. App. 377, 391, 774 S.E.2d 197, 210 (2015) ("To assert a civil claim based on the Georgia RICO statute, the plaintiff must demonstrate that . . . the defendant engaged in at least two predicate acts of racketeering activity.").

The second case McCauley relies on, *Reynolds v. Condon*, 908 F. Supp. 1494 (N.D. Iowa 1995), is easily distinguishable from this proceeding. There, a "[s]imple comparison of the original complaint with the second amended complaint . . . demonstrate[d] that the factual allegations upon which both complaints are based are nearly identical." *Id.* at 1506. The factual allegations in the original Complaint and the Proposed Amended Complaint cannot be reasonably described as "nearly identical." But for the single allegation regarding the filing of the Declaration in the Retaliation Suit, the factual allegations in the Proposed Amended Complaint are completely new.

McCauley also argues that relation back should be allowed here for the same "common scheme" reason the court allowed relation back in *McAfee v. Harman (In re Harman)*, 628 B.R. 359 (Bankr. N.D. Ga. 2021). There, the original complaint sought to deny the defendant's discharge under § 727(a)(2), alleging that the defendant avoided the plaintiff's prepetition garnishment by transferring $3,300 to his wife. The plaintiff attempted, after the deadline set by the Bankruptcy Rules, to amend the complaint to include four additional transfers as a basis to deny the debtor's discharge under § 727(a)(2). The court ultimately allowed the amended complaint to include allegations related to three of the four transfers because those allegations,

---

[5] O.C.G.A. § 16-14-3(5)(A) enumerates racketeering activity predicate acts for the purposes of Georgia racketeering claims. Defamation is nowhere among the predicate acts, but the statute includes various forms of fraud such as "[t]heft in violation of Article 1 of Chapter 8 of this title," which includes theft by deception under O.C.G.A. § 16-8-3.

rather than adding a new claim, merely added additional examples of how the defendant transferred or concealed assets in a common scheme with the $3,300 transfer to avoid the plaintiff's garnishment. *Id*. at 371. In other words, because the original complaint provided adequate notice that the plaintiff was asserting the defendant violated § 727(a)(2) by transferring assets to avoid plaintiff's garnishment, the defendant was on notice that any transfers to avoid the garnishment were at issue. But the court determined that a new allegation that the defendant created a trust in 1997 to divert funds and hide income from the company he operated did not relate back because the original complaint did not place the defendant on notice that the general use of his trust was at issue. Here, Powell was on notice that McCauley asserted a defamation claim that would likely fail as a matter of law[6]—not that she asserted conspiracy or extortion claims.

Finally, McCauley cites *Harlander v. Turner (In re Turner)*, Nos. 15-40525-EJC, 15-04037-EJC, 2017 Bankr. LEXIS 917 (Bankr. S.D. Ga. Mar. 31, 2017), for the proposition that a predicate act appearing in the original complaint is sufficient for a racketeering claim to relate back. In *Turner*, the plaintiff improperly filed the original complaint with two other plaintiffs, then amended the complaint twice before the court could rule on the defendant's motion to dismiss. Included in the amended complaints were new racketeering claims under both federal and Georgia law. In the original complaint, three plaintiffs alleged different instances of theft and fraudulent activity by the defendant in connection with their individual property renovations. The court determined that the original complaint improperly joined the plaintiffs because their claims *did not*

---

[6] *See* O.C.G.A. § 51-5-8 ("All charges, allegations, and averments contained in regular pleadings filed in a court of competent jurisdiction, which are pertinent and material to the relief sought, whether legally sufficient to obtain it or not, are privileged. However false and malicious such charges, allegations, and averments may be, they shall not be deemed libelous."); *McCauley v. Powell*, 373 Ga. App. at 174-75, 908 S.E.2d at 32 ("Our precedent demonstrates that OCGA § 51-5-8 affords statements falling within its parameters an absolute rather than a conditional privilege, and a defamatory statement afforded an absolute privilege is not actionable, regardless of the falsity of the statements or the speaker's malicious intent.") (internal formatting and citations omitted).

arise out of the same transaction or occurrence. In other words, the *Turner* court determined that the original complaint contained *several occurrences* of "[t]heft in violation of Article 1 of Chapter 8 of this title," which is unquestionably predicate activity for a Georgia racketeering claim. *See* O.C.G.A. § 16-14-3(5)(A)(xii). Because the proposed amended complaint merely "allege[d] the fraudulent conduct on a larger scale—that it occurred over many years and affected numerous customers," the court allowed the plaintiff to expand his factual allegations to encompass the broader scale of the alleged scheme and add a racketeering claim after the applicable Bankruptcy Rule 4007(c) deadline. At the same time, the court denied the plaintiff's request to add claims under § 727(a) because they were "based upon an entirely new set of facts unrelated to the [d]ebtor's fraudulent conduct alleged in the [o]riginal [c]omplaint." *Id.* at *15.

Here, McCauley argues that her original defamation claim provides the same sort of notice to Powell of a possible racketeering claim as the multiple occurrences of theft and fraud alleged by the plaintiffs in the original complaint in *Turner*. Notably, McCauley provided no authority that any court has ever found a defamation claim can constitute notice of a racketeering claim. Unlike the fraudulent activity and theft alleged in the original complaint in *Turner*, a defamation claim is not a predicate act for racketeering activity. *See* O.C.G.A. § 16-14-3; 18 U.S.C. §§ 1028, 1961. *See also, e.g., Cockerham v. Sellers*, 781 F. Supp. 2d 1056, 1062 (D. Idaho 2011) (plaintiff alleged "[a]t most, . . . a couple defamation claims," which "do not come close to the type of allegations required to allege a pattern of racketeering activity"). McCauley's allegations in the original Complaint are even poorer support for a racketeering claim than the insufficient factual allegations in *Cockerham*—at least the plaintiff there alleged more than one instance of activity in the original complaint.

The case of *Caron v. NCL (Bah.), Ltd.*, 910 F.3d 1359 (11th Cir. 2018), provides the Court

further instruction. There, the plaintiff filed a boilerplate slip-and-fall complaint against a cruise ship operator alleging various failures to maintain its facilities in a safe condition. The original complaint "complained of inadequate lighting around hazards, unreasonably slippery floors, and failure to ensure proper drainage of liquids." *Id*. at 1368. Once the plaintiff determined that he could not maintain his slip and fall suit against the defendant, he amended the complaint to add a claim for over-service of alcohol after the applicable statute of limitations, and the defendant moved to dismiss the claim as untimely. *Id*. at 1363. The district court granted the dismissal, and the plaintiff appealed.

Although the Eleventh Circuit believed that the factual allegation that the defendant failed to take proper precautions for the safety of passengers "could conceivably encompass serving more alcohol than passengers could safely consume before walking elsewhere on the ship," it nevertheless affirmed dismissal of the amended claim because "the test for relation back is not whether the new facts alleged could substantiate an old, boilerplate claim but whether the old facts alleged could put the defendant on notice that the new claim might be part of the litigation." *Id*. at 1368. As in *Caron*, the factual allegations in the original Complaint solely relate to defamation and are not "capacious enough to smuggle [the plaintiff's new claim] into the case." *Id*. The Motion to Amend must therefore be denied.

## IV.     CONCLUSION

McCauley's original Complaint did not contain sufficient factual allegations to place Powell on notice that McCauley might pursue a racketeering claim. McCauley's Proposed Amended Complaint, if allowed, would therefore not relate back and would be subject to dismissal as untimely. For these reasons, allowing the Proposed Amended Complaint would be futile, and the Motion to Amend must be denied. Accordingly, it is

**ORDERED** that the Motion to Amend is **DENIED**.

**[END OF DOCUMENT]**

**Distribution List**

Michele McCauley
c/o The Myer Law Firm
125 East Trinity Place
Suite 308
Decatur, Ga 30030

Mari L. Myer
The Myer Law Firm
Suite 308
125 East Trinity Place
Decatur, GA 30030

Pamela Sharail Powell
2426 Leslie Brook Dr.
Decatur, GA 30035

Laura Johnson Bailey
The Mabra Firm, LLC
1231 Booth Street NW
Atlanta, GA 30318